UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 3:25-CR-1547-KC |
| JOSE HUERTA | § § § § | |

## DEFENDANT'S MOTION TO DISMISS

JOSE HUERTA ("Mr. Huerta"), defendant in the above-captioned cause, moves to dismiss the Indictment in this case for failure to charge within the statute of limitations period and duplicity as to Counts One and Three and failure to state an offense as to Count Two. In support thereof, Mr. Huerta respectfully shows the following:

## I.     BACKGROUND

On June 25, 2025, a grand jury returned an indictment alleging that Mr. Huerta, his co-defendant Israel Navarro ("Mr. Navarro"), and other co-conspirators conspired to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, aided and abetted wire fraud in in violation of 18 U.S.C. §§ 1343, and conspired to commit mail fraud in violation of 18 U.S.C. §§ 1349 and 1341. Doc. No. 5. The charges are based on an alleged scheme in which Mr. Huerta, through his position as CEO of 'Hospital 1" and Israel Navarro, through his ownership of "Hospital 1" and "Hospital 2", used each of the hospitals to receive insurance reimbursements for drug tests that neither originated from, nor were tested at the respective hospitals i.e. "pass through billing". *Id.* In Count One, Mr. Huerta, Mr. Navarro, and four other co-conspirators are alleged to have committed wire fraud for using Hospital 1 and Hospital 2 for pass through billing over several

months in 2018. Specifically, it is alleged that the co-conspirators caused drug testing samples, with no affiliation to Hospital 1 or Hospital 2, to be referred to either "Laboratory A" or "Laboratory A-1", made it look as if the lab tests took place at Hospital 1 or Hospital 2, and then submitted claims to Blue Cross Blue Shield ("BCBS") for the drug tests at the respective hospital's higher reimbursement rate. In Count Two, Mr. Huerta and Mr. Navarro are alleged to have aided and abetted Blue Cross Blue Shield ("BCBS") in reimbursing Hospital 2 $2,430 in July of 2020. In Count Three, Mr. Huerta, Mr. Navarro, and four co-conspirators are alleged to, as part of the scheme referenced in Count One, cause fraudulent claims to be mailed, suggesting that the drug tests being billed to BCBS had some affiliation with Hospital 1 and Hospital 2.

## II.    LEGAL STANDARD

The propriety of granting a motion to dismiss "by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . .. If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal quotation marks omitted). Indeed, Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record).[1] Otherwise, the court would waste resources by allowing a case to proceed to trial and

---

[1]  *See, e.g.*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.").

later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores*, 404 F.3d at 325.

### III.  ARGUMENT

Mr. Huerta is accused of conspiring to commit wire fraud and mail fraud for an alleged scheme that, on the face of the Indictment, took place only over several months in 2018. As a result, the Indictment violates the five-year federal statute of limitations in 18 U.S.C. § 3282. Seemingly to address that obvious deficiency, the Indictment cites a single, small insurance payment from BCBS in 2020. But this occurred 2 years after Mr. Huerta withdrew from the alleged conspiracy, and the government fails to properly allege it was an overt act in furtherance of the conspiracy.

Even if it were properly alleged, both Counts One and Three detail two parallel conspiracies, one with each hospital, that were not interconnected. Thus, each charge is duplicitous.

Finally, the Government fails to state an offense in Count Two of the indictment as a defendant cannot aid and abet the act of someone not involved in the conspiracy. Since the action alleged in Count Two was the insurance payment from BCBS, the alleged "victim" and not a co-conspirator, the charge must be dismissed.

#### A. Statute of Limitations

Counts One and Three should be dismissed because both the alleged conspiracy to commit wire fraud and conspiracy to commit mail fraud had concluded more than five years before the Indictment was filed.

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted

within five years next after such offense shall have been committed." 18 U.S.C. § 3282. "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following" the alleged crime. *See Toussie v. United States*, 397 U.S. 112, 114 (1970). Statutes of limitations "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id*. at 114-15. Therefore, criminal limitations statutes are "liberally interpreted in favor of repose." *Id*. (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)).

When reviewing a motion to dismiss based on a statute of limitations, courts are bound by the language of the indictment. *See United States v. O'Brien*, 953 F.3d 449, 455 (7th Cir. 2020) (for a statute of limitations motion to dismiss, noting the "indictment is reviewed on its face, regardless of the strength or weakness of the government's case."); *United States v. Kemp & Associates, Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018) (holding that for motion to dismiss based on statute of limitations, the court is bound by the language of the indictment); *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954) ("On consideration of the [statute of limitations] motion to dismiss, the trial court was limited to the face of the indictment and was obliged to accept the facts therein alleged as true."); *cf. United States v. Davis*, 533 F.2d 921, 929 (5th Cir. 1976) (holding for purposes of statute of limitations, the government was bound by overt acts alleged in the indictment).

Once a defendant raises a statute of limitations issue, the Government "bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period." *Musacchio v. United States*, 577 U.S. 237, 248 (2016). Where the defendant moves to dismiss

4

based on statute of limitations, the Government must show the statute was complied with or that an exception applies by a preponderance of the evidence. *See, e.g., United States v. Wilson*, 322 F.3d 353, 359-60 (5th Cir. 2003); *United States v. Greever*, 134 F.3d 777, 780-81 (6th Cir. 1998); *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982).

Mail and Wire Fraud carry a five-year statute of limitations. *See* 18 U.S.C. § 3282. The Indictment only alleges that improper billing took place over various months in 2018. *See* Doc. No. 5 at p. 9, ¶ 12. While the "Overt Acts" listed include billing through 2021, there is no allegation that any bills past 2018 were fraudulent or were tied to fraudulently labeled claims. *Id.* at pp. 9-12. Furthermore, "if a defendant withdraws from a conspiracy, the statute of limitations begins to run when the withdrawal occurs." (citing *United States v. Heard*, 709 F.3d 413, 427 (5th Cir. 2013)). The Indictment alleges that Hospital 1 stopped paying the Marketing Company involved in this scheme in September of 2018 and Hospital 2 stopped paying it in October of 2018. Doc. No. 5 p. 11, ¶¶ 25-26. It goes on to allege that Mr. Huerta stopped being paid by the Marketing Company in October 2018. *Id.* at p. 11 ¶¶ 28. All alleged lab tests are alleged to have occurred in 2018. *Id.* at pp. 9-10 ¶¶ 3-10. Furthermore, the indictment states that "out of the approximately $18 million billed, over 99% were billed in 2018." *Id.* at p.11 ¶ 23. It makes no allegation connecting any bills past 2018 to fraudulent lab tests or billing. All allegations point to Mr. Huerta withdrawing from the conspiracies to commit wire and mail fraud in 2018, well over five years from the filing of the Indictment. *Id.* As a result, the five-year period has expired for Counts One and Three of the Indictment, and those Counts are subject to dismissal under § 3282.

The Government cannot rely on a payment by BCBS in July of 2020 to bring these Counts into the statute of limitations period, as the payment was not an overt act in furtherance of the conspiracy and on the face of the indictment.

5

To avoid the statute of limitations bar in a conspiracy case, the government "must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976). "[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Grunewald v. United States*, 353 U.S. 391, 397 (1957). "The function of the overt act requirement in a conspiracy prosecution is simply to manifest that the conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *United States v. Manges*, 110 F.3d 1162, 1170 (5th Cir. 1997) (quoting *Yates v. United States*, 354 U.S. 298, 334 (1957)).

"An overt act is an act performed to affect the object of a conspiracy … Though the act need not be of a criminal nature, it must be done in furtherance of the object of the conspiracy." *United States v. Green*, 47 F.4th 279, 291 (5th Cir. 2022) (quoting *United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995)). Though overt acts are typically affirmative actions taken by conspirators, the Fifth Circuit has recognized that, under certain circumstances, conduct like the knowing receipt of an expected payment from an alleged victim, can constitute an overt act of the conspiracy, thereby prolonging it. *See United States v. Girard*, 744 F.2d 1170 (5th Cir. 1984). But the Fifth Circuit in *Girard* emphasized that it "rel[ied] soley on *Girard's act of accepting and retaining* the payment and not the [victim]'s act of issuing the check." *Id.* at 1173 (emphasis added). In other words, it is the receipt by the conspirator that constitutes the overt act. Moreover, consistent with *Grunewald*, said receipt must be within "the scope of… the conspiratorial

agreement" and "in furtherance of the conspiracy." *Id.* at 1172. Other circuits follow the same rule. *See e.g.*, *United States v. Mennuti,* 679 F.2d 1032 (2d Cir. 1982) (where one of the co-conspirators personally cashed his check within the 5-year period); *United States v. Helmich*, 704 F.2d 547 (11th Cir. 1983) (where one of the co-conspirators flew to another country to retrieve his payment within the 5-year period).

Under this caselaw, the alleged July 2020 payment is clearly not an overt act extending the statute of limitations for either the wire fraud or mail fraud conspiracies charged in this case. First, the government does not allege that this July 2020 payment is within the "scope of" or "in furtherance of the conspiracy." *See Grunewald*, 353 U.S. at 397. The payment is not connected to any allegation of a fraudulent lab test. *See* Doc. No. 5 at p. 11, ¶ 29. As mentioned above, the only allegations of lab tests being fraudulently connected to the Hospitals was from 2018. *Id.* at p.9, ¶ 12. There is no listed "Overt Act" that alleges a fraudulently labeled lab test past 2018. *Id.* at pp. 9-11. Second, the government does not allege receipt specifically by a conspirator. The funds were allegedly direct deposited into "Hospital 2"'s bank account. *Id.* at p. 11, ¶ 29. There was no active or knowing receipt of the money by any member of the conspiracy. On the face of the Indictment, "Hospital 2" is not a co-conspirator. As such, "Hospital 2"'s receipt of this payment is not an overt act in furtherance of the conspiracy. Because the Indictment is devoid of any allegation that a co-conspirator knowingly and actively received the July 2020 funds, it was not an overt act in furtherance of either the wire fraud or mail fraud conspiracy, and the alleged conspiracies ended in 2018.

Because more than five years have passed since the alleged offense the Indictment should be dismissed. *See* 18 U.S.C. § 3282; *Musacchio*, 577 U.S. at 248.

**B. Duplicity**

Counts One and Three of the Indictment should also be dismissed because they are duplicitous. Each count alleges two parallel and separate conspiracies, one with each hospital.

"Joining two or more offenses in the same count (duplicity)" constitutes a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B)(i); *see also United States v. Baytank (Houston) Inc.,* 934 F.2d 599, 608 (5th Cir.1991). If two separate and distinct conspiracies are joined in one count of an indictment, that count is duplicitous. *See United State v. Sharpe*, 193 F.3d 852 (5th Cir. 1999).

"The Fifth Circuit has examined three factors in determining whether a series of events constitute a single conspiracy: (1) the existence of a common goal; (2) the nature of the scheme; and (3) overlapping of participants in the various dealings." *United States v. DeVarona*, 872 F.2d 114,118 (5th Cir. 1989) (citing *United States v. Richerson*, 833 F.2d 1147, 1153 (5th Cir. 1987); *United States v. Tilton*, 610 F.2d 302, 307 (5th Cir. 1980)). In regards to the nature of the scheme specifically, the Fifth Circuit has "asked whether 'the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture'… and whether the 'agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators....'" *Id.* at 118-119 (citing *United States v. Elam*, 678 F.2d 1234, 1245 (5th Cir. 1982); *United States v. Perez,* 489 F.2d 51, 62 (5th Cir. 1973)).

In Counts One and Three of the Indictment, the Government alleges two separate conspiracies, one with "Hospital 1" and the other with "Hospital 2" to commit both Wire Fraud and Mail Fraud. Doc. No. 5.  Based on the plain language of the Indictment, the schemes are parallel and not interdependent. Separate agreements are alleged to have been made with each hospital. *See* Doc. No. 5 at p. 8, ¶¶ 7 and 9. The Indictment contains no allegation that "Hospital

1" was engaging in "pass through billing" for "Hospital 2" to commit wire fraud or vice versa, nor does it allege that one hospital was using the other's name to commit mail fraud. The co-conspirators employed by each hospital are alleged to have used that specific hospital as a conduit for "pass through billing" based on a separate agreement between the "marketing company" and each individual hospital. While the conspiracies had similar goals and some overlapping participants, the activities related to one hospital are not "necessary or advantageous to the success" of the activities related to the other. *See Elam*, 678 F.2d at 1245. Therefore, Counts One and Three are both duplicitous and must be dismissed.

### C. Failure to State an Offense

Finally, Count Two of the Indictment, alleging Aiding and Abetting Wire Fraud must be dismissed because one cannot aid an abet an act that is not done with unlawful intent. BCBS' wire of $2,430 in 2020 was not done with criminal intent as BCBS is framed as the victim of this offense and not a co-conspirator.

A motion to dismiss for failure to state an offense made pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) is a challenge to the sufficiency of the indictment. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). Such a motion "requires the court to take the indictment as true and to determine whether an offense has been stated." *Id.* "Under Rule 12(b)(3)(B), a defendant may contest the sufficiency of an indictment on the basis that it fails to state an offense in at least two ways." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (citations omitted). First, a defendant can argue that the indictment is insufficient because it fails to charge an essential element of the crime, and second, the defendant can assert that the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of law or statutory interpretation. *Id.*; *see also Kay*, 359 F.3d at 741-42.

Count Two of the Indictment fails to state an offense, because an individual cannot aid and abet the actions of an alleged "victim" who has no criminal intent. To make out a claim for aiding and abetting under 18 U.S.C. § 2, the Government must allege "a community of unlawful intent between the aider or abettor and the principal" *Russel v. United States,* 222 F.2d 197, 199 (5th Cir. 1955). "[S]haring the requisite criminal intent" with the perpetrator is essential. *United States v. Stalnaker*, 571 F.3d 428, 437–38 (5th Cir. 2009) (quoting *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002)).

Count Two alleges that Mr. Huerta aided and abetted BCBS's payment to "Hospital 2" in July of 2020 by engaging in the conspiracies cited in Counts One and Three. The Indictment fails to allege that BCBS had any "unlawful" or "criminal intent" in making said payment. In fact, the Indictment frames BCBS as the "victim" of the alleged fraud. Therefore, Mr. Huerta could not aid and abet BCBS's reimbursement in 2020. As such, the Government has failed to state an offense in Count Two of the Indictment.

### IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Huerta requests that the Court dismiss all three counts of the Indictment.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


/S/
ELYSE SCHNEIDER
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Mr. Huerta*


## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2025, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA, Debra Kanof , Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.


/S/
ELYSE SCHNEIDER
*Attorney for Mr. Huerta*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION


UNITED STATES OF AMERICA                §
                                        §
                                        §
V.                                      §          NO. 3:25-CR-1547-KC
                                        §
JOSE HUERTA                             §
                                        §
                          **O R D E R**

On this day, the Court considered Defendant's Motion to Dismiss, and the Court is of the

opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that the Indictment in this cause is DISMISSED.

SIGNED AND ENTERED this _____ day of _____ , 20__.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE