**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.  EP-25-CR-1547-KC** |
| | § | |
| **(1) JOSE HUERTA,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## <u>RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

The United States of America (U.S.), through its United States Attorney for the Western District of Texas responds to and opposes defendant Huerta's Motion to Dismiss the Indictment in the above styled and numbered cause on all grounds asserted in the defendant's motion and will show that the Indictment herein was considered by a grand jury which issued a true bill well within the statute of limitations for crimes alleged in the indictment, that none of the counts are duplicitous, that the assertion that the "defendant cannot aid and abet the act of someone not involved in the conspiracy," is an erroneous interpretation of the facts and law associated with Count Two of the Indictment, and that the government, having tracked the statue for alleging Wire Fraud, stated an offense in Count Two of the Indictment.

"Unlike civil actions, an indictment is not generally subject to dispositive motion practice. *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009); *see also United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000)[1]; *United States v. Hagar*, No. 2:18-CR-00159-JAW, 2019 WL 97022,

---

[1] "[D]ismissing an indictment is an extraordinary step," *Li*, 206 F.3d at 62 (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997), because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function.

at *1 (D. Me. Jan. 3, 2019)" "Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step. *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997).

The dismissal of an indictment is an unusual and rarely used remedy. Because a court's "use [of] its supervisory power to dismiss an indictment ... directly encroaches upon the fundamental role of the grand jury," dismissal is granted only in unusual circumstances. *Whitehouse v. U.S. Dist. Court,* 53 F.3d 1349, 1360 (1st Cir.1995) (citing *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)). *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015**).**

## I.      COUNTS ONE AND THREE

### a.   Statute of Limitations

Defendant requests dismissal of counts One and Three of the Indictment claiming that the Wire Fraud and Mail fraud conspiracies "concluded more than five years before the Indictment was filed."  In making that claim, defendant ignores the nature of the violations charged, Wire Fraud and Mail Fraud, and conspiracy to commit same, and disregards the factual evidence timely provided to the defendant in discovery.

### 1.   Continuing Offenses': Wire Fraud, Mail Fraud, and Conspiracy to commit same

The statute of limitations for mail fraud and wire fraud and for conspiracy to commit either is five years. 18 U.S.C. § 3282.  Wire and Mail fraud punish "each act in furtherance, or execution, of the scheme". *United States v. Hickman*, 331 F.3d 439 (5th Cir. 2003).

---

The statute of limitations generally begins to run when a crime is complete. *Toussie v. United States*, 397 U.S. 112, 115 (1970).[2] However, the statute of limitations for a continuing offense begins to run at the end of the last act that was part of the offense. The Fifth Circuit has held that conspiracy is a continuing offense. *United States v. Walters*, No. 2:19-CR-51-KS-MTP, (citing *Tavarez-Levario*, 788 F.3d 443, 440, (conspiracy is a traditional continuing offense). In *United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005); the Fifth Circuit also noted, "[t]his court has held that conspiracy "is a continuing offense."

"However, the doctrine of continuing offenses presents a qualification to the general operation of this principle." *United States v. Tavarez-Levario*, 788 F.3d 433, 436 (5th Cir. 2015). A continuing offense "perdures beyond the initial illegal act, and that each day brings a renewed threat of the evil Congress sought to prevent even after the elements necessary to establish the crime have occurred." *Id.* at 436-37. "For a continuing offense, however, 'the statute of limitations does not being (sic) to run when all elements of the crime are first satisfied, but rather when the ongoing commission of the crime comes to an end." <u>*United States v. Ongaga*</u>, 820 F.3d 152, 160 (5th Cir. 2016). "[F]or a continuing offense, the statute of limitations does not begin to run when all elements of the crime are first satisfied, but rather when the ongoing commission of the crime comes to an end. *E.g., United States v. Edelkind,* 525 F.3d 388, 393–98 (5th Cir.2008)." *Tavarez-Levario* at 437. See also, *United States v. Barrett*, No. 2:20-CR-16-KS-MTP, 2021 WL 2160546, at *1 (S.D. Miss. May 27, 2021)

"[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance

---

[2] *See also*, "Generally, the statute of limitations begins to run when the crime is complete, meaning that all the elements of the crime have been satisfied." *U.S. v. Ongaga*, 820 F.3d, 152,159.

3

of the conspiracy." *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957). When the purpose of a conspiracy is to obtain a monetary benefit, the conspiracy continues until the full economic benefit of the scheme is received. *See United States v. Girard*, 744 F.2d 1170 (5th Cir. 1984); *United States v. McNair*, 605 F.3d 1152, 1213–14 (11th Cir. 2010): *United States v. McGill*, No. CR 12-112-01, 2016 WL 48214, at *12 (E.D. Pa. Jan. 5, 2016) ("In this case, HCH continued to receive Medicare reimbursements for inappropriate patients through at least December 2008, even after notification of the audit. Accordingly, the conspiracy continued until at least December 2008.").

This Indictment charges two conspiracies where the purpose of each conspiracy is to obtain a monetary benefit. The evidence provided in discovery by the government shows that the defendants conspired to fraudulently represent several aspects of claims made for reimbursement of laboratory urine drug tests to receive higher reimbursement than that to which they would be entitled to if the truth were told. Regarding the statute of limitations, the government provided discovery showing that the full economic benefit of the scheme herein, was not received until the reimbursement for the last claim was received, July 20, 2020.

On August 14, 2018, a claim, number 00002018235501136B0, was submitted to BCBS for a procedure noted as both CPT Code 80307, a presumptive urine drug test, and as procedure Code G0480, a definitive urine test. The claim was submitted for services regarding patient, DB, by entities controlled by the defendant conspirators. On July 20, 2020 as part of the continuing conspiracy alleged in counts One and Three, a payment made by BCBS for reimbursement of that same claim (number 00002018235501136B0) was deposited to a bank account associated with the defendants by the name on the account, which deposit was listed in the bank statement as "HCClaim PMT of $2,430.00," reimbursement for a medical procedure. The BCBS Provider

4

Claim Summary for the same deposited amount (net payment) lists Hospital 2 as the "Operator" (provider who submitted the claim), and includes the taxpayer I.D. Both the bank statement and the related documents trace the claim made to BCBS for UDT testing services for DB directly to the bank deposit on July 20, 2020. These documents were provided in discovery and are attached to this response to demonstrate the tracing of the last act in the continuing mail and wire fraud conspiracies.[3]

The purpose of these charged mail and wire fraud conspiracies was to obtain a monetary benefit, thus the end date of the conspiracies is the last payment satisfying the intent of the crime. The latest paid date for fraudulent claims made by Hospital 2 during the January 2018-July 2018 time period, using procedure codes 80307 and G0480, was July 20, 2020. The original fraudulent claim made to BCBS for services provided to DB, the reimbursement ultimately made by BCBS for the urine testing services performed on the sample of DB and the final wire deposit in the bank are acts in furtherance of, or execution of, the scheme to defraud. The Indictment received a true bill on June 15, 2025, thus the deposit of proceeds of the fraud on July 20, 2020, was within the statute of limitations. [4]

---

[3] The evidence is also relevant to the facts allege in Count Two.

[4] Note that The Indictment contains additional language, on its face, that reflects the statute of limitations has not been breached. The government included a lengthy list of Overt Acts incorporated into each count. Over Act 29, in each Count, specifically addresses that on July 20, 2020, within the statute of limitations, an act was committed that furthered the conspiracies:

Overt Act 29: On or about July 20, 2020, BCBS reimbursed **HOSPITAL-2** $2,430, which payment was for both presumptive and definitive lab analysis of urine samples claimed by **HOSPITAL-2** and which funds were deposited into **HOSPITAL-2's** bank account.

## II.     COUNT TWO

In the Motion to Dismiss, Huerta claims that Count Two of the Indictment must be dismissed for "failure to state an offense."   As authority, for this theory, Huerta claims "one cannot aid an (sic) abet an act that is not done with unlawful intent." (no authority provided)

**Count Two:**

> **1)JOSE HUERTA and (2)ISRAEL NAVARRO,** aided and abetted by each other, ***did devise and intend to devise a scheme and artifice to defraud and to obtain money and property*** from a healthcare insurer, ***BCBS, by means of material false and fraudulent pretenses, representations and promises***, both by affirmative acts and by deceitful concealment of material facts, that is, ***the defendants devised and attempted to devise a scheme to engage in illegal pass through billing*** of Urine Drug Tests (UDT), and for the purpose of executing such Scheme and Artifice to Defraud, the defendants transmitted and ***caused the transmission by wire,*** in interstate and foreign commerce, writings, signs, signals, pictures and sounds, that is, a reimbursement payment, that on the date alleged, the defendants ***caused the transmission of and deposit of a BCBS payment*** of approximately $2,430 into **HOSPITAL-2's** bank account as reimbursement to **HOSPITAL-2** for both presumptive and definitive lab analysis UDT testing, all in violation of Title 18, United States Code, Sections 1343 and 2. (Emphasis added)

Wire Fraud, codified at Title 18, United States Code, Section 1343, in relevant part states:

> Whoever, ***having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,*** transmits or causes to be transmitted by means of wire

Huerta misrepresents the allegations and legal nature of the charges in Count Two of the Indictment.  On page 2 of his motion, Huerta mistakenly claims, "[i]n Count Two, Mr. Huerta and Mr. Navarro are alleged to have aided and abetted Blue Cross Blue Shield ("BCBS") in reimbursing Hospital 2 $2,430 in July of 2020."  This is incorrect.  The plain language of the charge alleges the two defendants aided and abetted each other to commit fraud against BCBS. Nowhere is BCBS included as an aider or abettor.  The Indictment alleges the two co-defendants Huerta and Navarro, "did devise and intend to devise a scheme and artifice to defraud and to obtain

6

money and property from a healthcare insurer, BCBS." BCBS is clearly identified as the victim, and no part of the Count alleges BCBS engaged in or assisted the criminal conduct alleged.[5]

Huerta erroneously claims, "count Two alleges that Mr. Huerta aided and abetted BCBS's payment to Hospital 2 … by engaging in conspiracies in Count One and Two." Huerta misrepresents the elements and gravamen of Wire Fraud and of Count Two. No where in the Indictment is it stated, alleged or referenced that BCBS engaged in the conspiracies.

Count Two charges both Huerta and Navarro with "unlawful intent," specifically with devising and intending to devise a scheme and artifice to defraud and to obtain money and property from a healthcare insurer,[6] and further explains that criminal intent by describing the means by which the fraud was executed, by "material false and fraudulent pretenses, representations and promises, both by affirmative acts and by deceitful concealment of material facts, that is, the defendants devised and attempted to devise a scheme to engage in illegal pass through billing, to defraud and to obtain money and property from a healthcare insurer, the defendants devised and attempted to devise a scheme to engage in illegal pass through billing.

According to the defendant, "BCBS' wire of $2,430 in 2020 was not done with criminal intent as BCBS is framed as the victim of this offense and not a co-conspirator." The government agrees, BCBS did not have criminal intent, but Huerta and Navarro, who "caused" the wire transmission of the reimbursement to be deposited in the bank, did have the intent necessary to commit Wire Fraud and Mail Fraud.

---

[5] *See* 18 USC, § 2(a): Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

[6] The Indictment tracks the language of the Wire Fraud, statute: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire

7

It appears Huerta believes that Navarro and/or Huerta had to actually transmit the wire themselves for a crime to have occurred. See page 9 where the defendant asserts, "one cannot aid an(sic) abet an act that is not done with unlawful intent." In Count Two, Wire Fraud, the gravamen of the crime is not aiding or abetting, it is devising or intending to devise a scheme or artifice to defraud.

The Fifth Circuit Pattern Jury Instruction for Wire Fraud (and Mail Fraud) clarifies the issue here. Section 2.57, of the Instructions provide the elements of 18 USC 1343:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: That the defendant ***knowingly devised or intended to devise any scheme to defraud,*** that is _____ (*describe scheme from the indictment*);
>
> *Second*: That ***the scheme to defraud employed false material representations*** [false material pretenses] [false material promises];
>
> *Third*: That the defendant transmitted [***caused to be transmitted***] by way of wire [radio] [television] communications, in interstate [foreign] commerce, any writing [sign] [signal] [picture] [sound] for the purpose of executing such scheme; and (Empasis added)
>
> *Fourth*: That the defendant acted with a specific intent to defraud.
>
> (Emphasis added)

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L.Ed.2d 590 (1974) (citations omitted). *United States v. Quintanilla*, 114 F.4th 453, 470 (5th Cir. 2024)

With regard to Huerta's assertion that Count Two fails to state an offense, note that all the elements required in the Instruction above, which must be addressed at trial by the evidence, are

8

present in Count Two. The emphasized portion of the Third element above is the key to identifying the defendants, Huerta and Navarro, as separate from the victim BCBS.  Defendant Huerta seems to conflate these roles.  The government does not have to prove that either defendant actually mailed or wired anything, but rather, that one or both defendants *caused* an item to be mailed or wired in furtherance of the crime.

Huerta, citing *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004), avers that to determine the sufficiency of an indictment, "requires the court to take the indictment as true and to determine whether an offense has been stated," a position consistent with the government's view. The *Kay* decision is helpful to the government in other ways as well.  "[I]t is well settled that an indictment must set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged." The test for sufficiency is "not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimum constitutional standards;" namely, that it "[(1)] contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and [(2)], enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Kay* at 742.  *See also*, *United States v. De Bruhl*, 118 F.4th 735, 745 (5th Cir. 2024).

"The propriety of granting a motion to dismiss an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.... If a question of law is involved, then consideration of the motion is generally proper."

Taking Count Two of the Indictment as true, would require this Court to accept and acknowledge that Huerta and Navarro**,** aided and abetted by each other, "did devise and intend to

9

devise a scheme and artifice to defraud and to obtain money and property from a healthcare insurer, BCBS, by means of material false and fraudulent pretenses, representations and promises.

### III.     **DUPLICITY**

On page three of his Motion, Huerta asserts: "both Counts One and Three detail two parallel conspiracies, one with each hospital, that were not interconnected. Thus, each charge is duplicitous." Huerta provides no authority for or explanation of this assertion that Counts One and Three are duplicitous. In an attempt to understand what Huerta is alleging, the government will provide authority explaining duplicity in order to demonstrate the instant indictment is free of such an issue.

"Duplicity" is the joining in a single count of two or more distinct and separate offenses. C. Wright, *Federal Practice and Procedure: Criminal* § 142 at 469. *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982) Note, it is not, as claimed by the defendant, "two parallel conspiracies" "that were not interconnected."

That an indictment alleges more than one means by which conspirators "sought to accomplish [a] scheme does not render it duplicitous." *McDermot,* 1995 WL 371036, at *4 (citing *Owens v. United States,* 221 F.2d 351, 354 (5th Cir.1955)). *United States v. Mauskar*, 557 F.3d 219, 226 (5th Cir. 2009) An indictment is not duplicitous if it charges a single offense carried out through many different means. *United States v. Berardi,* 675 F.2d 894, 897–98 (7th Cir.1982) *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006), (holding there was no duplicity where indictment charged "ongoing and continuous course of conduct, accomplished through three different methods," repeated numerous times over the years, all involving the same defendant); *United States v. Prieto*, 812 F.3d 6, 10, 12 (1st Cir. 2016); *United States v. O'Brien*, 953 F.3d 449, 455

(7th Cir. 2020)( "Schemes to defraud ... often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity.")

As indicated above, the Indictment in the above styled and numbered cause does not violate the Statute of Limitations for Mail or wire Fraud conspiracies, as the final act in furtherance of the fraud occurred after the true bill was issued; Count Two does not fail to state an offense and there is no duplicity with any of the counts charged.

The government requests the Court deny the Motion to Dismiss in its entirety.

Respectfully submitted,

JUSTIN R. SIMMONS

UNITED STATES ATTORNEY

By: ___/s/_____
Debra P. Kanof
Assistant U.S. Attorney
Texas Bar #10093600
700 E. San Antonio, Suite 200
El Paso, Texas 79901
(915) 534-6884

## CERTIFICATE OF SERVICE

I certify that, on September 26, 2025, a copy of the foregoing motion was delivered to defendants' counsel, Deputy Federal Public Defenders, Elyse Schneider and Eric Hanshaw by automatic ECF.

By: _____/s/_____
Debra P. Kanof
Assistant U.S. Attorney