| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| | § | |
| V. | § | NO. 3:25-CR-1547-KC |
| | § | |
| JOSE HUERTA | § § | |

## DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE MOTION TO DISMISS

On September 19, 2025, Mr. Huerta filed a motion to dismiss all three Counts of his indictment based on statute of limitations violations, duplicitous counts, and failure to state an offense. *See* Doc. No. 63.

The Government filed a response on September 26, 2025 in which it argued that the conspiracy continued until a July 2020 payment from Blue Cross Blue Shield ("BCBS") was wired to Hospital 2, that each of the defendants' criminal intents was sufficient to support the allegations in Count Two, and that the indictment properly charged one conspiracy rather than two. Mr. Huerta responds to each argument in turn. *See* Doc. No. 65.

### I. Legal Argument

Each of the Government's arguments fails, and all counts of the Indictment should be dismissed. First, the Government fails to explicitly connect the July 20, 2020 payment to a fraudulent claim. It also stretches the case law on a conspiracy's effect on the statute of limitations, far beyond what is recognizable. The 2020 payment for lab work done in 2018 happened well after the conspiracy had concluded and there is no allegation that any co-conspirator knowingly received the funds.

1

Second, even if the purported allegation is that each defendant aided and abetted the other in committing wire fraud, the government does not make clear which specific conduct Mr. Huerta was aiding and abetting. Further complicating the government's argument is the fact that there continues to be no allegation of an overt act by a co-conspirator that is within the statute of limitations. As such, Count Two should also be dismissed as falling outside the statute of limitations.

Finally, while each of the hospitals may have been separate means to pursue a similar goal, there is no allegation that use of either means was advantageous to the other. Thus, there are two separate conspiracies with the two separate hospitals.

a. **Both Counts One and Three clearly violate the statute of limitations and should be dismissed.**

In addressing Mr. Huerta's Motion to Dismiss, the government responds that "dismissal of an indictment is an unusual and rarely used remedy…[b]ecause a court's 'use [of] its supervisory power to dismiss the indictment [may] directly encroach[] upon the fundamental role of the grand jury'". Doc. No. 65 (citing *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)). However, that is not the case with dismissal based on statute of limitations violations. "Statutes of limitations are designed to 'protect individuals,'" who are accused of an offense. *United States v. Rafoi*, 60 F.4th 982 (5th Cir. 2023) (citing *Toussie v. United States*, 397 U.S. 112,114 (1970)). As such, criminal limitations statutes are "liberally interpreted in favor of repose." *Id.* (quoting *United States v. Sharton*, 285 U.S. 518, 522 (1932)).

In its response, the government states that the July 20, 2020 payment was for "fraudulent claims made by Hospital 2 during the January 2018-July 2018 time period…for services provided to DB." Doc. No. 65 at p. 5. Despite summarily asserting that the claim was "fraudulent," the government never asserts that DB was not a patient of Hospital 2 or that the lab test was not

2

associated with Hospital 2 at any point. Thus, the government still fails to sufficiently tie the July 2020 payment to a fraudulent claim.

The government also argues that the statute of limitations is not implicated because conspiracy and wire fraud are continuing offenses. *See* Doc. No. 65 at 2-5. But simply because an offense is "continuing" does not mean that it continues the statute of limitations in perpetuity. Rather,

> [T]he crucial question in determining whether the statute of limitations has run is the scope of a conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.

*Grunewald v. United States*, 353 U.S. 391, 397 (1957).

Here, the government claims it was within the scope of the conspiracy when BCBS made a payment on July 20, 2020 for an August 14, 2018 claim. *See* Doc. No. 65 at 4-5. The government argues that receipt of funds expected from a scheme may be "within the scope of a conspiratorial agreement" and thereby extend the statute of limitations. *Id.;* (citing *United States v. Girard*, 744 F.2d 1170 (5th Cir. 1984)). However, this does not mean that any reimbursement following a scheme constitutes the required overt act. To constitute an overt act in furtherance of a conspiracy, there must be actual and knowing receipt of the funds or some benefit. *See Girard, 744 F.2d at 1173* (holding that the conspiracy was complete when the defendant "received his anticipated economic benefits); *United States v. McNair*, 605 F. 3d 1152, 1213-1214 (11th Cir. 2010).

The Fifth Circuit made clear in *Girard* that it is the *receipt* of the funds by a co-conspirator that constitutes the overt act. 744 F.2d at 1173. It follows that an overt act has not been committed where no co-conspirator actually receives the funds or some other benefit. *See id.* But it is not enough that the funds were received by a co-conspirator. "[T]hat overt act must be an act that is *knowingly* committed." *McNair,* 605 F.3d at1213-1214 (emphasis added) (citing *United States v.*

3

*Hogue*, 812 F.2d 1568, 1579 (11th Cir. 1987)); *See also* Fifth Circuit Pattern Jury Instructions (Criminal Cases) at p. 133 (2024); see also *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003). Nowhere in the indictment or in its response does the government allege that a member of the conspiracy knowingly received any funds. Instead, the government states that: "a payment by BCBS for reimbursement of that same claim…was deposited to a bank account associated with defendants by name on the account." Doc. No. 65 at p. 4. However, its first exhibit shows no such thing. Nor could it, as Mr. Huerta was not working at Hospital 2 on July 20, 2020. There is no allegation that any co-conspirator was aware the money was deposited into the account or had access to it.

In sum, by the Government's own admission, the funds were wired two years after the lab test was performed, far removed from the alleged conspiracy. *See* Doc. No. 65 at p. 4. There is no allegation that any of these co-conspirators knowingly received the funds in 2020. Therefore, Counts One and Three violate the statute of limitations and they must be dismissed.

**b. Count Two should be dismissed for lack of specificity and because it violates the statute of limitations.**

The government argues that "both Huerta and Navarro [had the requisite] unlawful intent" for aiding and abetting because they "devis[ed] and intend[ed] to devise a scheme and artifice to defraud and to obtain money…from a healthcare insurer." Doc. No. 65 at p. 7. This argument solely tracks the language of the Wire Fraud statute without providing specific conduct each co-conspirator undertook to aid and abet the wire fraud, beyond saying that they "devis[ed] a scheme to engage in illegal pass-through billing" and "'caused' the wire transmission" from 2020. *Id.* Therefore, the government's allegations lack specificity and Count Two of the Indictment should be dismissed on those grounds.

Regardless, even if its allegations were sufficient, the only overt act that could keep Count Two within the statute of limitations is the July 2020 reimbursement by BCBS. "[A]iding and abetting is governed by the statute of limitations applicable to the predicate offense" *United States v. Loe*, 248 F.3d 449 (5th Cir. 2001) because it is "derivative of, rather than separate from, the underlying or substantive offense." *United States v. Rabhan*, 540 F.3d 344 (5th Cir. 2008). As a result, Count Two faces the same statute of limitation problem as outlined above, and should be dismissed.

### c. Counts One and Three are duplicitous

The Government also disagrees that Counts One and Three are duplicitous by each charging two separate conspiracies. *See* ECF No. 65 at 10-11. As explained in the motion to dismiss, Count One does not just describe a single wire fraud conspiracy—it describes two, one involving Hospital 1 and one involving Hospital 2. *See* ECF No. 63 at 8-9. Count Three includes effectively the same error—it charges as a single mail fraud conspiracy two different conspiracies involving the two hospitals. *Id.*

The Government sidesteps the issue, proclaiming that a single offense is not duplicitous simply because it was carried out through different means. *See* ECF No. 65 at 10-11. But that ignores the issue, and the government does not offer a word of explanation for how the specific charges it brought are not duplicitous. Indeed, it appears to suggest that conspiracy charges cannot be duplicitous. Doc. No. 65 at 10 (insisting duplicity does not apply in cases of "two parallel conspiracies"). However, two separate conspiracies can clearly constitute "two or more distinct and separate offenses." *Id.* (citing C. Wright, *Federal Practice and Procedure: Criminal* §§ 142 and 469). In fact, there is abundant case law explaining how to determine whether a scheme is one sole conspiracy or two or more. *See, e.g.*, *United States v. Tilton,* 610 F.2d 302 (5th Cir.1980);

*United States v. Perez,* 489 F.2d 51 (5th Cir.1973); *United States v. Elam,* 678 F.2d 1234 (5th Cir. 1982); *United States v. Morado,* 454 F.2d 167, 170 (5th Cir. 1972). "In counting the number of conspiracies, the principal factors are (1) the existence of a common goal, (2) the nature of the scheme and (3) overlapping of participants in the various dealings. *United States v. Richerson*, 833 F.2d 1147, 1153 (5th Cir. 1987) (citing *Tilton*, 610 F.3d at 307).

The Government does not address these factors. It offers the unremarkable point that schemes can be carried out through different means. But it does not even specifically assert that the conduct involving Hospitals 1 and 2 was part of a shared scheme. For the second *Tilton* factor— "nature of the scheme"—a single conspiracy is likely where the "activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." *Elam*, 678 F.2d at 1246. In other words, if the use of different means is not interconnected, in a way that's beneficial to the overall scheme, that's a factor that suggests multiple conspiracies rather than one.

The alleged schemes between co-conspirators and Hospital 1 and Hospital 2 respectively, are not just two different ways to commit the same offense. While the goal may be similar, and some of the co-conspirators overlap, this case fails at the second *Tilton* factor. There is not even an allegation that using Hospital 1 to commit this offense benefitted Hospital 2 or vice versa. Therefore, while the conspiracies are similar, they are not interdependent enough to constitute one conspiracy, as such, Counts One and Three should be dismissed as duplicitous.

## II.     Conclusion

Because all three Counts of the Indictment violate the statute of limitations, are duplicitous, or lack specificity, they must be dismissed.

Respectfully Submitted,


Maureen Scott Franco
Federal Public Defender



/S/
ELYSE SCHNEIDER
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Mr. Huerta*


**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of October, 2025, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA, Debra Kanof, Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.


/S/
ELYSE SCHNEIDER
*Attorney for Mr. Huerta*